**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Hawthorne Race Course, Inc., *et al.*, | ) | Case No. 26-03505 (TAB) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**OBJECTION AND RESERVATION OF RIGHTS OF CHURCHILL DOWNS, INC. TO DEBTORS' NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORYCONTRACTS AND UNEXPIRED LEASES AND PROPOSED CURE AMOUNTS**

Churchill Downs, Inc. ("CDI") by and through its undersigned counsel, hereby submits this objection and reservation of rights (the "Objection") to the above-captioned Debtors' *Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and Proposed Cure Amounts* [Docket No. 335] (the "Cure Notice").[1] In support of its Objection, CDI respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Cure Notice fails to provide CDI with the necessary information to adequately ascertain its accuracy. As a preliminary matter, CDI and the Debtors entered into contracts titled Content License Agreement and Simulcast Wagering Agreement both prepetition (the "Prepetition Contracts") and postpetition (the "Postpetition Contracts"). Further adding to the confusion, CDI and the Debtors are party to another postpetition contract, that certain Service Agreement, entered into as of June 4, 2026 (the "Service Agreement"), that is not included in the Cure Notice. As such,

[1] Capitalized terms used but otherwise not defined herein shall have such meaning ascribed to them in the Cure Notice.

CDI is unable to confirm which contracts are included therein and must file this Objection to protect its rights.[2]

2. To the extent the Debtors are referencing the Prepetition Contracts, such Contracts are unable to be assumed and assigned as they were terminated prepetition. Further, in the event they are somehow considered to still be active, the Cure Cost is not the $0 listed in the Cure Notice. Rather, for the reasons set forth in the *Complaint* [Adv. Pro. 26-00350, Docket No. 1][3] and herein, the cost to cure is $851,443.78.

3. To the extent the Debtors are referencing the Postpetition Contracts, CDI does not dispute that the Cure Cost is $0 as of this moment; the Debtors are currently up to date on payments due thereunder. However, Hawthorne's failure to include the Service Agreement as a potential contract that may be assumed and assigned is a significant oversight that must be remedied in a supplemental pleading.

## BACKGROUND

**B. The Prepetition Contracts**

4. Hawthorne and CDI were parties to (i) that certain Content License Agreement, dated April 14, 2023 and (ii) that certain Simulcast Wagering Agreement, dated April 14, 2023, pursuant to which Hawthorne was permitted to simulcast races run at certain tracks, including CDI tracks and accept wagers thereon. Under the Prepetition Contracts, Hawthorne was required to pay all fees, money room adjustments, and other payments owed to CDI on a bi-weekly basis. Copies of the CDI Agreements are attached as **Exhibits 1 and 2** to the Complaint.

[2] CDI, through counsel, contacted Debtors' counsel on June 9, 2026 regarding these concerns but did not receive a response.
[3] The Complaint is incorporated herein in its entirety by reference.

5. Beginning in May 2024, Hawthorne abruptly and without justification ceased settling money room adjustments and paying amounts indisputably owed to CDI, despite continuing to collect and control pari-mutuel wagers generated from simulcast races under the Prepetition Contracts. A substantial portion of these funds were never property of Hawthorne and were required to be accounted for and disbursed in accordance with applicable law and contractual provisions.

6. Hawthorne has not disputed its debt owed to CDI. On August 8, 2025, Hawthorne executed a Confession of Judgment, Settlement Agreement, and Settlement Promissory Note whereby Hawthorne agreed to pay to CDI the amount of $1,512,399.93 for certain unpaid invoices, plus interest to accrue at a rate of 12% per year. The Confession of Judgment, Settlement Agreement, and Settlement Promissory Note are attached to the Complaint as **Group Exhibit 6**.

7. On December 23, 2025, the Circuit Court of Cook County entered the Confession of Judgment in favor of CDI and against Hawthorne in an amount of $1,641,371.83 consisting of the principal, fees, and interest accrued to date. This order is attached to the Complaint as **Exhibit 7**. Prior to Hawthorne's bankruptcy filing, $189,928.05 had been offset against Hawthorne's debt to CDI due to host fees CDI owed to Hawthorne for simulcasting races run at Hawthorne's tracks. Additionally, pursuant to the *Order Authorizing the Payment of Certain Necessary Prepetition Debt* [Docket No. 260] (the "Prepetition Debt Order"), Hawthorne paid CDI a further (i) $300,000.00 for outstanding interest and fees and (ii) $300,000.00 to reduce outstanding money room adjustments. The remainder of Hawthorne's debt—$851,443.78—is outstanding with $532,273.76 on account of money room funds from pari-mutuel wagers that Hawthorne is obligated to hold in trust and the remaining $319,170.02 comprised of host fees, late fees, interface fees, attorneys' fees, and interest.

**B. The Postpetition Contracts**

8. In accordance with the Prepetition Debt Order, Hawthorne and CDI entered into (i) that certain Content License Agreement, dated April 30, 2026 (the "Postpetition License Agreement") and (ii) that certain Simulcast Wagering Agreement, dated April 30, 2026 (the "Postpetition Wagering Agreement"), pursuant to which Hawthorne was permitted to simulcast races run at CDI tracks and accept wagers thereon. Exhibit A to the Simulcast Agreement was later amended and replaced in its entirety on June 4, 2026 by mutual agreement of the parties. Such amendment is not separately listed on the Cure Notice. CDI reserves all rights to the extent the Debtors attempt to assume and assign the Simulcast Agreement without the amended Exhibit A.

9. CDI and Hawthorne later entered into that certain Service Agreement, dated as of June 4, 2026, pursuant to which CDI provides certain informational services to Hawthorne. As stated above, the Service Agreement is not included in the Cure Notice.

**C. The Assumption Notice**

10. On June 8, 2026, the Debtors filed the Cure Notice, which identifies CDI as counterparty to two executory contracts to be potentially assumed and assigned in connection with the proposed sale of substantially all the Debtors' assets—the "Simulcast Wagering Agreement" and the "Content License Agreement." No further description of these contracts is provided. Each contract is stated to have a $0 cure amount.

**OBJECTION**

11. The Prepetition Contracts cannot be assumed and assigned as they are no longer in effect. *See Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212 (7th Cir. 1984)("Section 365 of the Code only gives a debtor the right to assume an executory contract. If a contract has been terminated pre-bankruptcy, there is nothing left for the debtor to assume."). Each Contract's term

(including amendments thereto) is tied to a respective CDI content or track, the latest of which expired in June 2025. As such, the Prepetition Contracts terminated by their terms prior to this chapter 11 and can no longer be assumed and assigned by the Debtors.

12. For the avoidance of doubt, to the extent the Court rules the Prepetition Contracts to be assumable, consistent with section 365 of the Bankruptcy Code, the Debtors must cure all defaults as of the date of assumption and provide adequate assurances of future performance thereunder. 11 U.S.C. § 365(b)(1). For the reasons listed above and in the Complaint, the appropriate cure is not the $0 listed but $851,443.78.

13. Lastly, the Service Agreement should be included in a supplemental Cure Notice. The Contract and Lease Procedures Order requires that the Cure Notice "state that *any* Contract or Lease may be assumed and assigned to the successful bidder of the sale assets[.]" (*emphasis added*). Due to the Debtors' failure to include the Service Agreement, CDI cannot confirm any cure amount and might be negatively affected should a potential purchaser be unaware of this existing contract. The Debtors should be required to correct their oversight in the interest of fairness.

## **RESERVATION OF RIGHTS**

14. CDI expressly reserves the right to amend, modify, or supplement this Objection. This Objection, or any later appearance, pleading, or claim, does not waive any other rights, claims, actions, defenses, set-offs, or recoupments to which CDI has or may be entitled under any contract or agreement, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, set-offs, and recoupments are expressly reserved.

**CONCLUSION**

WHEREFORE, CDI respectfully requests that the Court enter an Order consistent with this Objection; and for such other and further relief as may be just and proper under the circumstances.

Dated: June 22, 2026

**CHURCHILL DOWNS, INC.**

By: */s/ Michael Ott*

Michael Ott
Mason Zurek
Robert Casey
**ICE MILLER LLP**
200 West Madison, Suite 3500
Chicago, Illinois 60606
(312) 726-1567
Michael.Ott@icemiller.com
Mason.Zurek@icemiller.com
RJ.Casey@icemiller.com

*Counsel for Churchill Downs, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, a copy of the foregoing *Objection and Reservation of Rights Of Churchill Downs, Inc. to Debtors' Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and Proposed Cure Amounts* was served via the Court's CM/ECF system on all parties registered to receive electronic notice in these chapter 11 cases.

*/s/ Michael Ott*
Michael Ott