UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case Number:  26-03505 |
| | ) | (Jointly Administered) |
| Hawthorne Race Course, Inc., et al., | ) | Chapter:  11 |
| | ) | |
| Debtors. | ) | Honorable Timothy A. Barnes |
| | ) | |
| Debtor(s) | ) | |
| | ) | |

**ORDER (I) APPROVING
THE SALE OF ACQUIRED PROPERTY
FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS,
INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING
THE DEBTORS TO PERFORM THEIR OBLIGATIONS UNDER
THE PURCHASE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") [Docket No. 222], of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Sale Order") (a) authorizing and approving the entry into and performance under the terms and conditions of that certain Real Estate Agreement of Sale, substantially in the form attached hereto as **Exhibit 1** (as may be amended, supplemented, restated, or otherwise modified from time to time, the "Purchase Agreement"),[1] by and among certain of the Debtors (the "Sellers") and ALLIMAC 2023, LLC, a limited liability company organized under the laws of the State of Delaware (the "Purchaser"), and all other transaction documents, (b) authorizing and approving the sale (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the Purchase Agreement, the "Sale") of the property set forth in Section 1 of the Purchase Agreement (the "Acquired Property"), on an "as is, where is" basis, free and clear of all liens, claims, encumbrances, and other interests, except to the extent set

---

[1]   Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Purchase Agreement and the Bid Procedures Order, as applicable.

1

forth in the Purchase Agreement and this Sale Order, pursuant to the Purchase Agreement upon the closing of the Sale (the "Closing"), and (c) granting related relief, all as more fully set forth in the Motion; and this Court having entered the *Order: (I) Approving Bid Procedures in Connection with the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims and Encumbrances; (II) Scheduling a Sale Hearing and, If Necessary, an Auction; and (III) Granting Related Relief* [Docket No. 262] (the "Bid Procedures Order"); and this Court having entered the *Order Granting Debtors' Motion for Entry of an Order (I) Approving Designation of Stalking Horse Purchaser of Real Estate Assets, (II) Approving the Bid Protections, and (III) Granting Related Relief* [Docket No. 387]; and this Court having entered the *Order Rescheduling Sale Hearing and Modifying Related Bid Procedure Dates* [Docket No. 400]; and this Court having entered the *Order Authorizing Debtors in Possession to Employ and Retain Hilco Real Estate, LLC as Real Estate Broker* [Docket No. 255]; and this Court having entered the *Order Authorizing the Supplemental Retention and Employment of Province, LLC as Sale Process Advisor to the Official Committee of Unsecured Creditors* [Docket No. 250]; and the Debtors having determined that the Purchaser has submitted the highest or otherwise best bid for the Acquired Property and determined that the Purchaser is the Successful Bidder; and the Court having held a hearing on [July 20], 2026 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Purchase Agreement, and any and all objections to the Sale, the Purchase Agreement and the other transaction documents filed in accordance with the Bid Procedures Order; and the Court having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon the *Declaration of Timothy Sean Carey in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 17] (the "Carey

Declaration") and the *Declaration of Billy Condon in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 19] (together with the Carey Declaration, the "First Day Declarations"), and the testimony proffered at the Sale Hearing; and due and sufficient notice of the Motion, the Sale Hearing, the Purchase Agreement, and the Sale having been provided; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties in interest; and the Court having jurisdiction over this matter; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation, it is hereby

**FOUND, CONCLUDED, AND DETERMINED THAT:**

**Jurisdiction, Venue, and Final Order**

A.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute

3

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### Notice of the Motion, Auction, Sale Hearing, Purchase Agreement and Sale

D.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Purchase Agreement, and the Sale has been provided in accordance with sections 102(1), 105, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007 and 9014.  The Debtors have complied with all obligations to provide notice of the Motion, the Sale Hearing, the Purchase Agreement, and the Sale as required by the Bid Procedures Order.  The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the Purchase Agreement, or the Sale is required.

E.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

### Highest and Best Offer

F.      As demonstrated by the evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a sale process in accordance with, and have, along with the Purchaser, complied in all respects with, the Bid Procedures Order and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Acquired Property.

G.      (i) The Debtors and their advisors engaged in a robust and extensive marketing and sale process, both prior to the commencement of these chapter 11 cases and through the postpetition sale process in accordance with the Bid Procedures Order and the sound exercise of

4

the Debtors' business judgment, as more fully detailed in the First Day Declarations and the evidence proffered or adduced at the Sale Hearing; (ii) the Debtors conducted a fair and open sale process; (iii) the sale process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Acquired Property, or who the Debtors believed may have had an interest in acquiring the Acquired Property, to make an offer to purchase the Debtors' assets, including, without limitation the Acquired Property; (iv) the Debtors and the Purchaser have negotiated and undertaken their roles leading to the entry into the Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner; and (v) the sale process conducted by the Debtors pursuant to the Bid Procedures Order and the Bid Procedures resulted in the highest or otherwise best value for the Acquired Property for the Debtors and their estates, was in the best interest of the Debtors, their estates, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result. There is no legal or equitable reason to delay entry into the transactions contemplated by the Purchase Agreement.

H.     No other entity or group of entities has submitted or otherwise presented a higher or otherwise better offer to the Debtors to purchase the Acquired Property than the Purchaser.

I.     Approval of the Purchase Agreement, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of their obligations under the Purchase Agreement.

J.     The consummation of the Sale outside a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The

Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without

the protections that a disclosure statement would afford.

K.      Entry of an order approving the Purchase Agreement and all the provisions thereof

is a necessary condition precedent to Purchaser's consummation of the Sale, as set forth in the

Purchase Agreement.

### **Good Faith of Purchaser**

L.      The consideration to be paid by the Purchaser under the Purchase Agreement was

negotiated at arm's-length, in good faith and without collusion pursuant to section 363(m) of the

Bankruptcy Code and constitutes reasonably equivalent value and fair and adequate consideration

for the Acquired Property. Specifically: (i) the Purchaser recognized that the Debtors were free

to deal with any other party interested in purchasing the Acquired Property; (ii) the Purchaser

complied in all respects with the provisions in the Bid Procedures Order in negotiating and

entering into the Purchase Agreement and the other transaction documents, and the Purchase

Agreement, the other transaction documents, and the transactions described therein comply with

the Bid Procedures Order; (iii) the Purchaser agreed to subject any bid to the competitive bid

procedures set forth in the Bid Procedures Order; (iv) all payments made by the Purchaser in

connection with the Sale have been disclosed in the Purchase Agreement; (v) no common identity

of directors, officers, or controlling stockholders exists among the Purchaser and the Debtors; (vi)

the negotiation and execution of the Purchase Agreement and the other transaction documents

were at arm's-length and in good faith, and at all times each of the Purchaser and the Debtors

were represented by competent counsel of their choosing; (vii) the Purchaser did not in any way

induce or cause the chapter 11 filing of the Debtors; and (viii) the Purchaser has not acted in a

collusive manner.  The Purchaser will be acting in good faith within the meaning of section

363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase

Agreement and the other transaction documents.  The terms and conditions set forth in the

Purchase Agreement are fair and reasonable under the circumstances and were not entered into

for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors

or their creditors under any applicable laws.  The findings of Purchaser's good faith under section

363(m) shall not inure to the benefit of any third party.

M.    The Purchaser and its equityholders (and the subsidiaries of each of its

equityholders), and with respect to each of the foregoing, its management, boards of directors,

members, officers, directors, managers, employees, attorneys, brokers, agents, and representatives

(collectively, the "Purchaser Parties"), have acted in good faith.  The Purchase Agreement and

the other transaction documents, and each of the transactions contemplated therein, were

negotiated, proposed, and entered into by the Debtors and the Purchaser Parties in good faith,

without collusion or fraud, and from arm's-length bargaining positions.  The Purchaser Parties

are a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and,

as such, is entitled to all the protections afforded thereby.

**No Fraudulent Transfer**

N.    The consideration provided by the Purchaser pursuant to the Purchase Agreement

for its purchase of the Acquired Property constitutes reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession,

or the District of Columbia.

O.     Neither the Purchaser nor its past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, brokers, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies or partners (collectively, the "Purchaser Stakeholders") is a continuation of the Debtors or their respective estates and no Purchaser Stakeholder is holding itself out to the public as a continuation of the Debtors or their respective estates and the Sale does not amount to a consolidation, merger, or de facto merger of the Purchaser (or any other Purchaser Stakeholder) and the Debtors.

**Validity of Transfer**

P.     The Debtors' boards of directors have authorized the execution and delivery of the Purchase Agreement and the Sale of the Acquired Property to the Purchaser (or its designee).  The Debtors (i) have full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Sale, and (iii) have taken all action necessary to authorize and approve the Purchase Agreement and to consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the transactions contemplated by the Purchase Agreement, except as otherwise set forth in the Purchase Agreement.  The Acquired Property constitutes property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

**Section 363(f) Is Satisfied**

Q.      The Sale of the Acquired Property to the Purchaser (or its designee) under the terms of the Purchase Agreement meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the Sale of the Acquired Property will be free and clear of any and all liens, claims, interests, and encumbrances, and will not subject any Purchaser Stakeholder to any liability for any liens, claims, interests, and encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability).  All holders of liens, claims, interests, and encumbrances who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of liens, claims, interests, and encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their liens, claims, interests, and encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert liens, claims, interests, and encumbrances, or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable.  Those holders of claims who did object and that have an interest in the Acquired Property falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

R.      In order for the Debtors to deliver the Acquired Property free and clear of all liens, claims, interests, and encumbrances under section 363(f) of the Bankruptcy Code, no persons or horses, including the Backstretch Community (as defined in the *Limited Objection and Reservation of Rights to Approval of Proposed Sale of Hawthorne Race Course to ALLIMAC 2023, LLC*

[Docket No. 428]), may be on, living on, or stabled or housed on, the Acquired Property as of the Closing.

S.      Derby DIP LLC, in its capacity as DIP Lender (as defined in the *Final Order Authorizing Debtor in Possession Postpetition Financing* [Docket No. 232] (the "Final DIP Order")), has consented to the sale of the Acquired Property to the Purchaser pursuant to the Purchase Agreement.  Subject to receipt of the applicable Sale Proceeds set forth in paragraph 20 below and full satisfaction of the DIP Obligations (as defined in the Final DIP Order, as supplemented by the Supplemental DIP Order), the sale of Acquired Property to the Purchaser shall be deemed to be free and clear of the DIP Liens (as defined in the Final DIP Order).

T.      The transfer of the Acquired Property to the Purchaser (or its designee) under the Purchase Agreement will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Acquired Property free and clear of all liens, claims, interests, and encumbrances.  Subject to receipt of the applicable Sale Proceeds set forth in paragraph 20 below, the Debtors may sell their interests in the Acquired Property free and clear of all liens, claims, interests, and encumbrances because, in each case, one or more of the standards set forth in section 363(f) has been satisfied.  The Purchaser would not have entered into the transaction documents and would not consummate the transactions contemplated thereby (i) if the transfer of the Acquired Property was not free and clear of all interests of any kind or nature whatsoever, including, without limitation, the presence or habitation of any persons or horses, including the Backstretch Community, any licenses (whether implied or express), any leases (whether implied or express),and any rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise or (ii) if the Purchaser or any of its affiliates or designees would, or in the future could,

10

be liable for any interests, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise or for the presence or habitation of any persons or horses, including the Backstretch Community, on the Acquired Property. Not transferring the Acquired Property free and clear of all interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates.

### Secured Creditors

U.    Based on the Final DIP Order, as well as the Debtors' business records, the Debtors' schedules, and claims filed in the Debtors' bankruptcy cases, the following creditors have asserted liens on all or a portion of the Acquired Property in the following amounts (currently estimated as of August 31, 2026):

| Secured Creditor | Amount | General Description of Collateral (*see* Proofs of Claim for actual description of collateral) | Support |
|---|---|---|---|
| Cook County Treasurer | $4,434,444 | CHP Premises; Hawthorne Premises | Claim Nos. 1 and 15 and Debtor's business records |
| Derby DIP LLC | $21,651,194.44 | DIP Collateral including Acquired Property | Dkt. No. 232 |

11

| Secured Creditor | Amount | General Description of Collateral (*see* Proofs of Claim for actual description of collateral) | Support |
|---|---|---|---|
| 180 Hawthorne Holdings, LLC, as successor-in-interest to Signature Bank ("**180 Hawthorne**") | $53,163,940 | Acquired Property | Dkt. No. 232 (Final DIP Order); Claim No. 109 against Debtor HRC; Claim No. Claim No. 14 against Debtor CHP; Claim No. 13 against SDI; and Dkt No. 344 |
| Aria Group Architects, Inc. ("**Aria**") | $7,082,509, which includes 10% statutory interest per annum and legal fees recoverable under the Illinois Mechanics' Lien Act. | CHP Premises | Claim No. 3 against Debtor CHP, and Claim Nos. 8 and 120 against Debtor HRC, pertaining to mechanics' liens originating on August 7, 2024 (recorded on August 7, 2024 in the Office of the Recorder of Deeds of Cook County, Illinois as Document No. 242208024). |
| W.E. O'Neil Construction Company ("**W.E. O'Neil**") and any and all related claims of W.E. O'Neil's subcontractors (the "Subcontractors"). The Subcontractors include, but are not limited to, the | $7,771,211, which includes 10% statutory interest per annum and legal fees recoverable under the Illinois Mechanics' Lien Act. | CHP Premises | Claim No. 3 against Debtor PTC; Claim No. 6 against Debtor CHP; Claim No. 8 against Debtor SDI; and Claim No. 56 against HRC pertaining to mechanics' liens originating on October 12, 2022 (recorded on |

| Secured Creditor | Amount | General Description of Collateral (*see* Proofs of Claim for actual description of collateral) | Support |
|---|---|---|---|
| following: Milburn, LLC and Gurtz Electric Co., Waukegan Steel, SG Metal & Glass, Warren Thomas, USAFP, Mechanical Inc., Prime Scaffolding, Helm Mechanical, and National Rent-a-Fence. | | | October 12, 2022 in the Office of the Recorder of Deeds of Cook County, Illinois as Document No. 2228557045). See also 9019 Motion dated July 19, 2026; subcontractor Milburn LLC's ("Milburn") Claim No. 4 against Debtor CHP; Milburn's Claim No. 2 against Debtor SDI; and Milburn LLC's Claim No. 24 against Debtor HRC pertaining to sub-contractor's claim for lien originating on November 10, 2022 (recorded on November 10, 2022 in the Office of the Cook County Clerk as Document No. 2231449119). |
| Latto Capital LLC ("**Latto**") | $7,500,000 (subject to Committee challenge) | CHP Premises | Docket No. 232 at Findings of Fact h(iii) |
| Churchill Downs, Inc. | $851,443.78 | Hawthorne Premises | Claim 70 |

13

| Secured Creditor | Amount | General Description of Collateral (*see* Proofs of Claim for actual description of collateral) | Support |
|---|---|---|---|
| Monarch Content Management, LLC | $7,565,167.27 | Hawthorne Premises | Claim 92 |

**W.E. O'Neil Settlement**

V.     In resolution of the limited objection to the Sale and reservation of rights filed by W.E. O'Neil [Docket No. 432] (the "WEO Sale Objection") and all disputes concerning W.E. O'Neil's asserted secured claim and mechanics' lien against the Acquired Property, and pursuant to the settlement of such matters as set forth in the Debtors' and WEO's Joint Motion for Entry of An Order Approving Settlement with W.E. O'Neil Construction Company, Inc. Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Docket No. 435], and as approved by this Court on July 20, 2026 (the "WEO Settlement"), W.E. O'Neil has agreed to: (a) the allowance of its proofs of claim (Claim No. 56 against Hawthorne Race Course, Inc.; Claim No. 6 against Carey Heirs Properties, LLC; Claim No. 8 against Suburban Downs, Inc.; and Claim No. 3 against Post Time Catering, Inc.) as a single allowed secured claim in the reduced amount of $4,950,000 (the "WEO Allowed Secured Claim"), with the remaining unpaid portion of W.E. O'Neil's claims to be allowed as general unsecured claims, subject to future liquidation and allocation among the Debtors' Estates based upon the ongoing accrual of interest, fees, and other costs; (b) in full and final satisfaction of the WEO Allowed Secured Claim and any and all secured claims of W.E. O'Neil's Subcontractors, (i) receive payment at Closing of $4,500,000 (the "WEO Claim Payment"), to be paid in cash on a dollar-for-dollar basis from the Sale Proceeds, and (ii) as a

14

condition to its receipt of payment, WEO shall permit payment at Closing of $450,000, as a gift by W.E. O'Neil on account of the WEO Allowed Secured Claim, to the Illinois Thoroughbred Horsemen's Association ("ITHA") and its charitable foundations, the Illinois Backstretch Charitable Foundation, Inc. and Galloping Out, Inc., both Illinois 501(c)(3) corporations, not for lobbying fees or in relation to political gain, but for the expressed purposes of assisting the Backstretch Community (as defined in the ITHA's objection) and horses, and in partial resolution of the ITHA's objection to the Sale and in satisfaction of the ITHA's claim against the Sale Proceeds; and (c) the remainder of W.E. O'Neil's claims against the Debtors' Estates and the remainder of any and all related claims of W.E. O'Neil's Subcontractors shall be deemed allowed general unsecured claims. The Debtors and W.E. O'Neil shall work cooperatively to dismiss the Appeal and all related litigation following W.E. O'Neil's receipt of the WEO Claim Payment. Notwithstanding anything to the contrary in this Sale Order, in the event that the Closing does not occur or the WEO Claim Payment is not paid to W.E. O'Neil in full, the WEO Settlement shall be of no force or effect with respect to the compromise of W.E. O'Neil's claim, and W.E. O'Neil's asserted secured claim, mechanics' lien against the Acquired Property, the WEO Sale Objection, Milburn LLC's asserted secured claim, the pending motion for relief from the automatic stay, and the Appeal shall be automatically reinstated and preserved in full, without prejudice and with the same validity, extent, and priority as existed immediately prior to entry of this Sale Order, and nothing in this Sale Order shall constitute a waiver, release, satisfaction, or impairment of any of W.E. O'Neil or the Subcontractors' claims, liens, rights, defenses, or remedies.

W.      In resolution of the Aria Objection (the "Aria Settlement"), Aria has agreed to: (a) an allowed secured claim of $4,950,000, with the remaining unpaid portion of Aria's claims to be allowed as general unsecured claims, subject to future liquidation and allocation among the

15

Debtor's Estates based upon the ongoing accrual of interest, fees, and other costs; (b) in full and final satisfaction of its secured claims against the Debtor's Estates, and any of its subcontractors: (i) receive payment at Closing of $4,500,000 (the "Aria Claim Payment"), to be paid in cash on a dollar-for-dollar basis from the Sale Proceeds and (ii) as a condition to its receipt of payment, Aria shall permit payment at Closing of $450,000, as a gift by Aria to the ITHA and its charitable foundations in the following amounts, the Illinois Backstretch Charitable Foundation, Inc. ($350,000) and Galloping Out, Inc. ($100,000), both Illinois 501(c)(3) corporations, not for lobbying fees or in relation to political gain, but for the expressed purposes of assisting the Backstretch Community (as defined in the ITHA's objection) and horses, (c) the remainder of Aria's claims against the Debtors' Estates shall be deemed allowed general unsecured claims, and (d) subject to its receipt of payment from the proceeds of sale, Aria shall cause its Adversary Complaint to be dismissed with prejudice.  Notwithstanding anything to the contrary in this Sale Order, in the event that the Closing does not occur or the Aria Claim Payment is not paid to Aria in full, the Aria Settlement shall be of no force or effect with respect to the compromise of Aria's claim, and Aria's asserted secured claim, mechanics' lien against the Acquired Property, Aria's objection, and the Adversary Complaint shall be automatically reinstated and preserved in full, without prejudice and with the same validity, extent, and priority as existed immediately prior to entry of this Sale Order, and nothing in this Sale Order shall constitute a waiver, release, satisfaction, or impairment of any of Aria or its subcontractors' claims, liens, rights, defenses, or remedies.

X.      Solely to the extent that no persons or horses, including the horsemen and the Backstretch Community, are on, living on, or housed or stabled on, the Acquired Property by August 31, 2026 at 4:00 p.m., prevailing Central Time (as determined by the Debtor and the

16

Purchaser), and solely to the extent Closing has occurred, the Purchaser agrees to contribute $1,000,000 of funds to be paid at Closing to the ITHA (the "Purchaser/ITHA Funds"), for the sole purpose of assisting the effective transition and vacating of the Backstretch Community (as defined in the ITHA's objection) and horses, off of the Acquired Property.

Y.      The Debtors have filed a motion seeking authority to obtain additional debtor in possession financing from Derby DIP LLC in an amount up to $1,000,000 (the "Additional DIP Financing").  The Additional DIP Financing will only be used in the manner permitted in the Additional DIP Financing motion to cover the costs of the continued use of the Acquired Property by the horsemen and the Backstretch Community through August 31, 2026.  Contemporaneously herewith, the Court entered a final order approving the additional DIP financing (the "Supplemental DIP Order").  At Closing, the ITHA shall cause a portion of the Purchaser/ITHA Funds to be paid to the Debtors in an amount equal to the Additional DIP Financing and not to exceed the Purchaser/ITHA Funds.

**IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.      The Motion is GRANTED to the extent set forth herein.

2.      All objections to or reservation of rights with respect to the Motion or the relief requested therein that have not been withdrawn or resolved are overruled with prejudice. All persons and entities who did not object or withdraw their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      The Purchase Agreement and the other transaction documents, and all terms and conditions thereof, are hereby approved in all respects.  The failure to specifically include any

17

particular provision of the Purchase Agreement or the transaction documents in this Sale Order shall not diminish or impair the effectiveness of such provision.

**Transfer of the Acquired Property as set forth in the Purchase Agreement**

4. The Debtors are authorized and directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the transaction documents and this Sale Order, and (b) take all further actions and execute and deliver the transaction documents and any and all additional instruments and documents that may be necessary or appropriate to implement the Purchase Agreement and the other transaction documents and consummate the Sale in accordance with the terms thereof, all without further order of the Court.

5. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Acquired Property to the Purchaser (or its designee) in accordance with the Purchase Agreement, the other transaction document and this Sale Order.

6. The ITHA shall communicate to its membership and communicate to them that no persons or horses, including the Backstretch Community are on, living on, or housed or stabled on, the Acquired Property at the Closing. The ITHA shall use best efforts to cause the Backstretch Community to vacate the Acquired Property by August 31, 2026. Notwithstanding anything to the contrary herein, Purchaser shall not be required to proceed to Closing in the event that individuals or horses, including the Backstretch Community, continue to live on, or are otherwise housed or stabled on, the Acquired Property.

7. On or before August 1, 2026, the ITHA shall  promptly give notice that all persons (including the Backstretch Community) that are on, living on, or housed on the Acquired Property

18

must vacate the Acquired Property as soon as possible, but no later than 4:00 p.m. (Central Daylight Time) on August 31, 2026 (hereinafter, the "Eviction Deadline"), which notice, at a minimum, shall include this Sale Order signed by the Court and a summary of the terms contained here, by posting this Sale Order and summary in multiple high traffic locations in the Backstretch that are visible to all persons (including the Backstretch Community) that are on, living on, or housed on the Acquired Property.  On August 7, 14 and 21, 2026, the ITHA shall provide reports to the Debtors, Purchaser and 180 Hawthorne Holdings related to the move out status of the Backstretch Community including, but not limited to, a contemporaneous report related to the total persons and horses then on, living on, or housed on, the Acquired Property and such other reasonable requests for information.

8.      Upon Closing and payment of the $1,000,000 to the ITHA, the ITHA, on behalf of itself and each of its members, including each individual of the Backstretch Community, (i) fully and forever release the Purchaser Stakeholders from any and all claims, causes of action, counterclaims, crossclaims, interests, damages, remedies, third-party claims, demands, rights, actions, controversies, offsets, licenses, liens, indemnities, and guaranties of any kind whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, directly or derivatively, in contract, tort, law, equity or otherwise and (ii) hereby provide all requisite consent to the vacating of the Acquired Property no later than August 31, 2026, notwithstanding any rights arising under applicable state or local laws or regulations.

9.      At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Acquired Property shall be immediately vested in the Purchaser (or its designee) pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code.  Such transfer shall constitute a legal,

valid, enforceable, and effective transfer of the Acquired Property. All persons or entities, presently or at or after the Closing, in possession of some or all of the Acquired Property, are directed to surrender possession of any and all portions of the Acquired Property to the Purchaser (or its designee) or its respective designees on the Closing or at such time thereafter as the Purchaser (or its designee) may request. For the avoidance of doubt, any licenses, tenancy rights and/or related agreements (express or implied, and whether written or oral) with respect to any person (including the Backstretch Community) then on, living on (or housed on) the Acquired Property are deemed rejected as of Closing.

10.     This Sale Order (a) shall be effective as a determination that, as of the Closing, (i) no claims will be assertable against any Purchaser Party or any of its respective assets, (ii) the Acquired Property shall have been transferred to the Purchaser (or its designee) free and clear of all liens, claims, interests, and encumbrances, including any licenses (whether implied or express), any leases (whether implied or express), and the presence or habitation of any persons or horses, including the Backstretch Community, and (iii) the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and the other transaction documents. The Acquired Property are sold free and clear of any reclamation rights. All liens, claims, interests,

and encumbrances on the Acquired Property shall attach to the proceeds of the Sale ultimately attributable to the property against which such liens, claims, interests, and encumbrances applied or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such liens, claims, interests, and encumbrances applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.

11.     Except as otherwise provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Property, and the ownership, sale, or operation of the Acquired Property prior to Closing or the transfer of the Acquired Property to the Purchaser (or its designee), are hereby forever barred, estopped, and permanently enjoined from asserting such claims against any Purchaser Party and its property (including, without limitation, the Acquired Property).  Following the Closing, no holder of any claim or interest shall interfere with the Purchaser's (or its designee's) title to or use and enjoyment of the Acquired Property based on or related to any such claim or interest, or based on any action the Debtor may take in their Chapter 11 cases.

12.     If any person or entity that has filed financing statements, mortgages, mechanic's claims, lis pendens, or other documents or agreements evidencing claims against the Debtors or in the Acquired Property shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims, interests, and encumbrances that the person or

entity has with respect to the Debtors or the Acquired Property or otherwise, then only with regard to the Acquired Property that are purchased by the Purchaser (or its designee) pursuant to the Purchase Agreement and this Sale Order, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Property, (b) the Purchaser (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against the Purchaser Stakeholders and the Acquired Property, and (c) upon consummation of the Sale, the Purchaser (or its designee) may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, interests, and encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Acquired Property.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Sale Order authorizing the Sale and assignment of the Acquired Property free and clear of liens, claims, interests, and encumbrances shall be self-executing and neither the Debtors nor the Purchaser (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

## No Successor or Transferee Liability

13.     No Purchaser Stakeholder shall be deemed, as a result of any action taken in connection with the Purchase Agreement, the consummation of the Sale contemplated by the

22

Purchase Agreement, or the transfer, operation, or use of the Acquired Property to (a) be a legal successor, or otherwise be deemed a successor to the Debtors, (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act of 1974 ("ERISA"), tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation.

14.     Immediately prior to the Closing, the Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or controlling stockholders existed between the Purchaser and the Debtors.

15.     Other than as expressly set forth in the Purchase Agreement, no Purchaser Stakeholder shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Acquired Property or (b) any claims against the Debtors or any of their predecessors or affiliates.  Except as expressly provided in the Purchase Agreement with respect to the Purchaser, no Purchaser Stakeholder shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter

23

arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Acquired Property prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefits which is or has been sponsored, maintained or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any time contributed, or had any obligation to contribute.  No Purchaser Stakeholder shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act (29 U.S.C. §§ 2101 et seq.), (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (the "NLRA"), or (f) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Purchaser's purchase of the Acquired Property pursuant to the terms of the Purchase Agreement. Without limiting the foregoing, no Purchaser Stakeholder shall have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Acquired Property.

16.     Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against any Purchaser Party or their respective assets (including, without limitation, the Acquired Property), with respect

to any (a) claim in these Chapter 11 cases or in connection with or related to the Sale or the Debtors or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b):  (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Acquired Property or conduct any of the businesses operated with respect to such assets.

### Good Faith of Purchaser

17.     The Sale contemplated by the Purchase Agreement is undertaken by the Purchaser Parties, without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

18.     Neither the Debtors nor the Purchaser Parties have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchaser for the Acquired Property under the Purchase Agreement is fair and reasonable and the Sale may not be avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy Code.

19.     The findings herein concerning Purchaser Parties, including findings of good faith under section 363(m), shall not inure to the benefit of any third party.

## **Distribution of Proceeds**

20.     At Closing, the Debtors are authorized and directed to distribute sale proceeds (the "Sale Proceeds") to the following parties in the amounts set forth below:

A)  All amounts due the Cook County Treasurer that are secured by the CHP Premises and the Hawthorne Premises;

B)  All amounts due to Derby DIP LLC under the Final DIP Order and the Supplemental DIP Order, which are estimated to be $21,651,194.44 as of August 31, 2026;

C)  On account of its success fee, the Debtors shall distribute $787,500 to Province, LLC representing 0.875% of the purchase price;

D)  On account of its success fee, the Debtors shall distribute $787,500 to Hilco Real Estate, LLC representing 0.875% of the purchase price;

E)  In full satisfaction of all claims held by 180 Hawthorne against the Debtors' estates, the Debtors shall distribute $52,963,940 to 180 Hawthorne;

F)  In full satisfaction of all secured claims held by Aria, and any subcontractor of Aria, against the Debtors' estates, the Debtors shall distribute (i) $4.5 million to Aria and (ii) as a condition to its receipt of payment, direct the payment of an additional $450,000 (as a gift designated by Aria on account of its secured claim) to the ITHA's charitable foundations in the following amounts, the Illinois Backstretch Charitable Foundation, Inc. ($350,000) and Galloping Out, Inc. ($100,000), both Illinois 501(c)(3) corporations, not for lobbying fees or political gain, but expressly for purposes of assisting the Backstretch Community (as defined in the ITHA's objection) and horses.  The remainder of Aria's claims against the Debtors' estates shall be deemed allowed general unsecured claims and subject to its receipt of payment from the proceeds of sale, Aria shall cause its Adversary Complaint to be dismissed with prejudice;

G)  In satisfaction of the WEO Allowed Secured Claim, and the secured claim of any Subcontractor of W.E. O'Neil, against the Debtors' estates, the Debtors shall distribute (i) $4.5 million to W.E. O'Neil, to be allocated pro rata between W.E. O'Neil and the Subcontractors, and (ii) as a condition to its receipt of payment, direct payment of an additional $450,000 (as a gift designated by W.E. O'Neil on account of its secured claim) to the ITHA and its charitable

foundations, the Illinois Backstretch Charitable Foundation, Inc. and Galloping Out, Inc., both Illinois 501(c)(3) corporations, not for lobbying fees or political gain, but expressly for purposes of assisting the Backstretch Community (as defined in the ITHA's objection) and horses. The remainder of W.E. O'Neil and the Subcontractors' claims against the Debtors' estates shall be deemed allowed general unsecured claims;

H) The remainder of any sale proceeds, if any, shall be distributed to Latto in full satisfaction of its secured claims against the Debtors' estates. The remainder of Latto's claims against the Debtors' estates shall be deemed general unsecured claims.

21. Solely to the extent that no persons or horses, including the Backstretch Community, are on, living on, or housed or stabled on, the Acquired Property by August 31, 2026 (as determined by the Debtor and the Purchaser), and solely to the extent Closing has occurred, the Purchaser shall contribute $1,000,000 of funds to be paid at Closing to the ITHA, for the sole purpose of assisting the effective transition and vacating of the horsemen and the Backstretch Community and horses, off of the Acquired Property. At Closing, ITHA shall pay to the Debtors, solely from the Purchaser/ITHA Funds, the amount needed to reimburse the Debtors' estates for the Additional DIP Loan in full in cash.

22. The distribution of Sale Proceeds as provided herein shall not be (either directly or indirectly): (a) subject to any challenge, objection, reduction, counterclaim, disallowance, recoupment, recharacterization, subordination (equitable, contractual or otherwise), or offset for any reason, and (b) subject to any objection, avoidance, or recovery actions under the Bankruptcy Code or applicable law, including, without limitation, sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, any provisions of the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar state or common law.

27

**Contingent Eviction Procedures**

23.     For the avoidance of doubt, any person (including the Backstretch Community) on, living on or housed on the Acquired Property shall vacate and surrender exclusive possession of the Acquired Property to the Debtors by the Eviction Deadline and shall remove all personal property from the Acquired Property (including any and all horses) by the Eviction Deadline.

24.     At the continued status hearing set for August [   ], 2026, the Court will consider arguments for additional relief including, but not limited to, authorizing and directing the Clerk to issue a writ of assistance pursuant to Bankruptcy Rule 7070 and 11 U.S.C. § 105(a) for any person (including the Backstretch Community) or any other occupant, licensee or other person that fails to vacate or surrender possession of the Acquired Property on the Eviction Deadline

**Other Provisions**

25.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Purchase Agreement and any related agreements executed in connection therewith shall (a) constitute allowed superpriority administrative expense claims under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, (b) not be subordinate to any other administrative expense claim against the Debtors' or Debtors' affiliates except for the DIP Obligations and the Carve Out (each as defined in the Final DIP Order, as supplemented by the Supplemental DIP Order), and (c) shall not be altered, amended, discharged or affected without the prior written consent of the Purchaser, and (d) be paid by the Debtors in the time and manner provided for in the Purchase Agreement without any further order of this Court.

26.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, (a) to allow the Purchaser to give the Debtors any notice provided for in the Purchase Agreement, (b) to allow

28

the Purchaser to take any and all actions permitted by the Purchase Agreement in accordance with the terms and conditions thereof, including, without limitation, effectuating the Sale and the other transactions contemplated by the Purchase Agreement and (c) to otherwise implement the terms and provisions of the Purchase Agreement and this Sale Order.

27.     The terms and provisions of the Purchase Agreement, the other transaction documents and this Sale Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the Acquired Property, the Purchaser, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors' chapter 11 cases or upon conversion to Chapter 7 under the Bankruptcy Code, as to which trustee(s), examiner(s), or receiver(s) such terms and provisions likewise shall be binding.  The Purchase Agreement shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), or receiver(s).

28.     The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered:  (a) confirming any chapter 11 plan in any of these chapter 11 cases; (b) converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 cases; or (d) pursuant to which this Court abstains from hearing any of the chapter 11 cases.  The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)–(d) above, shall continue in these chapter 11 cases, or following dismissal of these chapter 11 cases.  This Sale Order (including the obligations herein) shall be enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, against any trustee or any other estate

29

representative elected or appointed in these chapter 11 cases, upon the conversion of any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing.

29.     If the Closing does not occur by September 2, 2026, then (i) 180 Hawthorne's conditional consent to the Sale as set forth herein shall immediately terminate, be deemed void and of no force and effect; *provided*, *however*, that 180 Hawthorne may extend its conditional consent to the Sale in its sole and absolute discretion in writing, which writing may be delivered by counsel to 180 Hawthorne to counsel for the Debtors and Purchaser (including by email); and (ii) any conditional forbearance by 180 Hawthorne related to the Debtor's alleged default under the Final DIP Order (including, but not limited to, the Milestones and adequate protection payments) shall immediately terminate, be deemed void and of no force and effect (*provided*, *however*, that 180 Hawthorne may extend its conditional forbearance in its sole and absolute discretion in writing, which writing may be delivered by counsel to 180 Hawthorne to counsel for the Debtors and Purchaser (including by email)), and 180 Hawthorne shall retain all of its rights and remedies set forth in the Final DIP Order, including but not limited to as set forth in Paragraph 47 therein.  For the avoidance of doubt, in the event that the Debtor terminates the Purchase Agreement because Closing has not occurred because any individuals or horses, including the Backstretch Community, continue to live on, or are otherwise housed or stabled on, the Acquired Property, the Escrow Agent is directed to, and the Debtor shall cause the Escrow Agent to, return the Deposit (each as defined in the Purchase Agreement) to the Purchaser immediately and no later than one business day following any such termination; *provided*, *however*, that the foregoing shall in no way prejudice or limit Purchaser's right, claim, or entitlement to the Deposit pursuant to the terms of this Order and the Purchaser Agreement.

30.     180 Hawthorne Holdings, LLC is hereby designated as the Back-Up Bidder and its bid is selected as the Back-Up Bid for the Acquired Property.  If a sale to the Back-Up Bidder closes, the Back-Up Bidder shall release any liens it holds against the Debtors' real and personal property interests at 13148 Rivercrest Drive, Crestwood, Illinois.

31.     Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

32.     The Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

33.     The Purchase Agreement may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or their creditors.  For the avoidance of doubt, all other modifications, amendments, or supplements that have a material adverse effect on the Debtors' estates or their creditors shall require Court approval.

34.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, and 9014 or otherwise, the terms and conditions of this Sale Order shall be effective immediately upon entry and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.

36.     To the extent there is any conflict between the terms of this Sale Order and the Purchase Agreement, the terms of this Sale Order shall control.  Nothing contained in any chapter

31

11 plan hereinafter confirmed in these chapter 11 cases or any order confirming such chapter 11

plan, or any other order of the Court, shall conflict with or derogate from the provisions of the

Purchase Agreement or any other transaction document or the terms of this Sale Order, unless

otherwise agreed by the Debtors and the Purchaser (or, with respect to applicable Sales Proceeds,

the affected creditors).

37.     The Debtors are authorized to take any actions reasonably required or desirable to

give effect to the transactions, provisions, and powers contemplated hereunder.

38.     The Court shall retain exclusive jurisdiction with respect to the terms and

provisions of this Sale Order and the Purchase Agreement.

Dated:  July __, 2026                                    ENTERED:

_____
Judge Timothy A. Barnes
United States Bankruptcy Court